# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA BRASHIER,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>    Defendant. | 1:07-cv-00375 GSA<br><br>ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT<br><br>(Document 17) |

## BACKGROUND

Plaintiff Barbara Brashier ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

///

///

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On July 1, 2008, the Honorable Lawrence J. O'Neill reassigned the case to the undersigned for all purposes.

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff protectively filed for disability insurance benefits and SSI on March 26, 2004. AR 52-54, 227-229. She alleged disability since August 30, 2003, due to dermatomyositis, muscle pain, neuromuscular disease, arthritis, high blood pressure and vaginal cervical cancer. AR 52-54, 227-229, 74. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 25, 26, 27-31, 34-39, 40-41, 230, 231. On December 15, 2005, ALJ Sean Teehan held a hearing. AR 238-293. ALJ Teehan denied benefits on July 10, 2006. AR 11-17. On January 12, 2007, the Appeals Council denied review. AR 6-9.

<u>Hearing Testimony</u>

On December 15, 2005, ALJ Teehan held a hearing in Fresno, California. AR 238-293. Plaintiff appeared with her attorney, Robert Christenson. AR 240. Vocational expert ("VE") Cheryl Chandler also appeared and testified. AR 240, 289-293.

Plaintiff was 61 at the time of the hearing. AR 244. Her date of birth is July 10, 1944. AR 244. She lives alone in a one-bedroom apartment. AR 245. She graduated from high school in 1966. AR 245-246. After high school, she took college classes, but did not earn a degree. AR 246. She received emergency medical technician training in 1972. AR 246. She renewed her certificate at Modesto Junior College in 1976. AR 246. She also took classes at Modesto Junior College, Visalia Adult School and the library. AR 247-249.

Plaintiff testified that she can read and write in English. AR 251. She last worked in January of 2004 for the IRS. AR 252. She was a data transcriber trainee. AR 252. She worked there just during the two-week training period. AR 252. It was part-time, about six hours a day, four or five days a week. AR 252. She did not stay any longer because she failed the test. AR 252. She was having some problems. AR 252. She would miss a lot that was said. AR 252. She was the first one there and the last one to leave, but she missed a lot. AR 252.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

1  After leaving the IRS, she put in her application as a general part-time worker in Tulare
2  County in 2004. AR 253. She was accepted into the pool of workers, but was never used. Her
3  name is no longer on the list. AR 254.

4  Plaintiff also put her application in at Fairway Market, a grocery store, for part-time
5  office work in September 2004. AR 253, 254, 256. She never head back from them. AR 255.
6  She also applied through California State Rehab and AARP. AR 255. California State Rehab
7  told her to apply for Social Security. AR 255.

8  Plaintiff testified that she started working for Transwest Specialities in 1990. AR 256-
9  257. She drove a city bus for a little over three years. AR 257. In 2002, the company doctor
10  took her license away so she could not drive buses. AR 258. She got really sick in 1999 and
11  started driving less and doing more training. AR 258. She taught people how to drive buses.
12  AR 258. She did that part time and then went into full time in 2001. AR 258. She could "drive
13  some like relief driver." AR 259. When she lost her license in the spring of 2002, she could not
14  train anymore because they needed to have someone with a bus license. AR 259. After that, she
15  did National Transit database surveys at Laidlaw. AR 259. She rode the buses and counted
16  people getting off and on, what time they went by the checkpoints and how many people were on
17  the bus at certain checkpoints. AR 260. She did that every other day for approximately three
18  hours. AR 260. It was not a full-time position. AR 260.

19  Plaintiff testified that she lost her license because the doctor said her blood pressure was
20  too high. AR 261. She went to her doctor and got blood pressure medication. AR 261. The
21  doctor said she could not drive and take that medication. AR 261. She told the doctor she had
22  been taking the medication since 1999. AR 261. They told her they could not let her have a
23  license because of the Atenolol. AR 261.

24  Plaintiff testified that she cannot go back to driving because she does not have a license
25  and cannot get one. AR 262. She also has some physical problems. AR 262. She has one of the
26  muscular dystrophy diseases called dermatomyositis. AR 262. Sometimes she cannot move her
27  legs when she is sitting down. AR 262. She was taking prednisone and it made her gain 100

28

1  pounds and did "all sorts of bad things" to her.  AR 262.  The doctor told her not to take it again.

2  AR 262.  There is no medication for it.  AR 262.  The disease is neuromuscular.  AR 262.

3        She also has early Alzheimer's, a "dementia-type thing."  AR 262.  She was diagnosed on

4  October 4, 2004.  AR 263.  It is getting a little bit worse.  AR 263.  She is "not really getting any

5  treatment" for it.  AR 264.

6        Plaintiff also testified that she cannot bend over because her esophagus will not close.

7  AR 265.  She has medicine for it.  AR 265.  When she was driving buses, she was required to

8  fasten down wheelchairs and she was not able to do it.  AR 265.  She only could drive buses

9  where the "likelihood of having a wheelchair was really slim."  AR 265.  Sometimes she would

10 have to lift her leg from the accelerator to the brake due to the neuromuscular disease.  AR 265.

11 She is diabetic so her feet have a burning, stinging sensation.  AR 265.  In her legs, the muscles

12 would burn and "would tighten up and get stiff."  AR 265.  She could not move.  AR 265.

13       Plaintiff testified that during the day, she tries to wake up at 5:00 and take a blood test.

14 AR 266.  She takes her medicine first and gets dressed.  AR 266.  She just sits around.  AR 266.

15 Sometimes she tries to walk to the store, but has not been able to go there for a couple of weeks.

16 AR 266.  Her back has been "like a spasm" and she has not been able to walk to the store.  AR

17 266.  The store is about six blocks from where she lives.  AR 266.  It is a grocery store.  AR 266.

18 She has a large folding cart that she uses "like a walker."  AR 267.  She puts her groceries in it

19 and pushes them home.  AR 267.

20       Plaintiff testified that she hurt her back cleaning her house, so she has not cleaned it in a

21 couple of weeks.  AR 267.  She hurt her back trying to clean the bathmat in the bathtub.  AR 267.

22 She bent over too far.  AR 268.  Before that, she had problems cleaning the house.  AR 268.  She

23 cannot scrub the bathtub and has to use a "real long-handled scrubber."  AR 268.  She cannot

24 clean the ovens really well.  AR 268.  She cleans the door and "just inside a little bit," but she

25 cannot reach to the back.  AR 268.  She sometimes vacuums.  AR 266.  She cannot mop.  AR

26 269.  She uses the same kind of "scrubbing" like with the bathroom and just kind of pushes it

27 around the best she can.  AR 269.  She sweeps if she "absolutely" has to.  AR 269.  It is easier to

28

1  vacuum. AR 269. She does laundry. AR 269. She has a washer and a dryer, but cannot reach in
2  to get the clothes out of the dryer. AR 269. She uses a device that grabs. AR 269.

3  Plaintiff testified that she has two daughters. AR 269. They live nearby. AR 269. They
4  have children. AR 269. She has five grandchildren. AR 269. She gets together with them. AR
5  270. The two oldest ones drive and sometimes take her places. AR 270. The twins go to school
6  a block from her house, so they come over a lot for lunches. AR 270. If they do not want to ride
7  their bikes to school, then their mother drops them at her house and they walk. AR 270. They
8  come back in the afternoon. AR 270. She sees them the most. AR 270. They will be 16. AR
9  270. She does not get to see the 14-year-old and the 13-year-old because they live pretty far off
10 the bus line and she cannot walk that far. AR 270.

11 Plaintiff testified that she cooks meals for herself if she can. AR 270. She gets a lot of
12 frozen food. AR 270. She stopped cooking a lot in December 2004. AR 270-271. When her
13 grandchildren come over, they bring their own lunches. AR 271. She makes lunches for them
14 once in a while. AR 271. She makes breakfast, lunch and dinner for herself. AR 271.

15 Plaintiff testified that she usually just reads during the day to keep herself occupied. AR
16 271. She used to do knitting and crocheting, but cannot do it anymore because her hands have
17 arthritis. AR 272. She tries to do some games on the computer, but it is "kind of a problem
18 sitting too long." AR 272. She starts to get a burning, numb feeling in her upper legs where they
19 meet the chair. AR 272. She also gets a pain at her tailbone. AR 272.

20 Plaintiff testified that she does not go on trips with her daughters and grandchildren. AR
21 272. She used to go to Pismo Beach and Disneyland, but she does not go anywhere with them.
22 AR 272-273. They go out to a restaurant maybe two or three times a year. AR 273. They get
23 together a Christmastime. AR 273. She "got together with [her] youngest daughter for
24 Thanksgiving mostly." AR 273.

25 Plaintiff testified that she does not drive a car. AR 274. She last renewed her license in
26 2002, when she lost her bus license. AR 274. It expired in 2007. AR 274. She does not drive
27 because all of a sudden things are black and dark gray. AR 274. People and objects are really
28 dark and she "couldn't possibly drive." AR 275. She can see to walk because she sees well

5

1  enough to not bump into something.  AR 275.  The last time she went driving was in 2002.  AR
2  275.  She has not driven since 2002.  AR 275.
3         Plaintiff testified that she has problems concentrating.  AR 275.  She loses her train of
4  thought.  AR 275.  She likes to read.  AR 275.  She reads fiction, Stephen King or mysteries.  AR
5  276.  The books she has been reading are ones that she has read before.  AR 276.  She has not
6  read anything new, because she forgets what she reads.  AR 276.  She does not get a newspaper.
7  AR 276.  The kind of computer games she is playing do not take too much concentration.  AR
8  276.  She plays about 20 minutes.  AR 276.
9         Plaintiff testified that the length of time she can sit depends on the chair.  AR 277.  She
10 can sit on a "regular chair like a sofa kind of chair" for "a couple hours."  AR 277.  She can stand
11 for five or ten minutes.  AR 277.  After five or ten minutes, she walks a little bit, pacing back and
12 forth.  AR 277.  It is easier than just standing.  AR 277.  If she is able to stand and walk, then she
13 can do that for about 15 minutes.  AR 277.  She can walk six blocks to the store and six blocks
14 back.  AR 278.  On a good day, she could walk about 24 blocks.  AR 278.  It takes her about 20
15 or 30 minutes to walk six blocks.  AR 278.  She can go faster with her pushcart.  AR 278.  It is
16 slower with her cane.  AR 278.  She did not use her cane until she quit her last job.  AR 278.  She
17 has it for balance.  AR 279.  The doctor who told her that she should use a cane was "Buddha K.
18 Hill" in 2002.  AR 279.  He did not write a prescription for her to buy a cane.  AR 279.  She told
19 him she already had one.  AR 279.  The canes she had were her parents' canes.  AR 279-280.
20        Plaintiff testified that she can lift less than five pounds.  AR 280.  She is not able to bend
21 over.  AR 280.  She can climb up stairs if she can hold both hands on something.  AR 280.  She
22 does not come down stairs because her feet have a tendency to flop over and she turns her ankle.
23 AR 280.  She does not have stairs at home and she does not have occasion to walk up and down
24 stairs.  AR 280-281.  She cannot stoop because of acid reflux.  AR 281.  She has problems
25 reaching out in front or above her head.  AR 281.  She has stiffness in her shoulders.  AR 281.
26 The doctor said it was the rotator cuff problem in her right arm.  AR 281.  The pain has "kind of
27 gone away but it's stiff."  AR 281.  She has to take one arm and push the other one up to get it
28 up.  AR 281.

Plaintiff testified that normally she does not have any problems seeing, but "once in a while things get like dark all of a sudden" for 15 or 20 minutes. AR 281. It makes her afraid to drive. AR 281. She does not want to have an accident. AR 281.

Plaintiff testified that she currently is seeing Dr. Zismer. AR 282. She sees him every two to three months for medication. AR 282. He is going to give her something for whatever is causing the stiffness in her legs, back and arms. AR 282.

Plaintiff testified that one of the medications she takes three times a day causes her to have some stomach problems. AR 282. It is the medication for the itching. AR 282. She also has two or three that make her sleepy. AR 283. She takes those in the morning. AR 283. She takes Lipitor in the evening and Atenolol in the morning. AR 283. She is taking "glucophase" for her diabetes and it does not cause any problem. AR 283. She is taking a diuretic, but is up all night going to the bathroom. AR 283-284. She does not think the Lipitor causes her problems. AR 284.

Plaintiff testified that she has back pain around her waist and below. AR 284. She was told that the dermatomyositis causes it. AR 285. She has had muscle aches since she was a little girl. AR 285. She has back pain all the time. AR 285. She has a prescription for the back pain, but has not gotten it filled yet. AR 286. Up to the time of the hearing, she had been taking over-the-counter medication. AR 286. She also uses Absorbine Jr. AR 286. It works better than pills. AR 286. She probably takes four ibuprofen pills three times a day. AR 286. It does not help. AR 286. She can see a little difference if she does not take it. AR 286.

Plaintiff testified that when she is at home she can sit down without a problem because she sits on her bed. AR 286. Her sofa and her chair are too low and she has to push herself to get up. AR 287. She is able to sit for about a half an hour and then starts to feel stiff. AR 287. If she gets up and moves around, then she can sit back down. AR 287.

Plaintiff testified that her whole life is a rest break right now. AR 287. On a good day, she would have to stop 20 minutes every hour to rest. AR 288. Most days are pretty good. AR 288. When she has bad days, they will last for two or three weeks. AR 288. She has not had a day that bad since 1990. AR 288. It was unusual. AR 288.

The VE also testified in response to questions from the ALJ. AR 289. The VE identified Plaintiff's past relevant work primarily as that of a bus driver. AR 290. The DOT classifies the work as medium exertional level, SVP 4, semiskilled, which was how it was performed. AR 290. Her work as a bus driver trainer was light per DOT, SVP 6, skilled, and was performed consistent with the DOT. AR 290. Plaintiff's work as a general clerk was light, SVP 3, semiskilled. AR 290. The VE testified that in her experience a bus driver trainer has to have a current bus driver's license. AR 290.

The ALJ asked the VE to assume a hypothetical person of the same age, education, language and work background as Plaintiff. AR 290. The ALJ also asked the VE to assume that this person would be limited to walking and standing for a period of 15 minutes at a time, could walk two hours in an eight-hour day, could sit for two hours in an eight-hour day and could lift less than five pounds. AR 290-291. The VE testified that a person with those limitations would not be able to perform Plaintiff's past relevant work or any other work in the regional or national economy. AR 291.

For the second hypothetical, the ALJ asked the VE to assume a hypothetical person with a medium exertional ability. AR 291. This person could not concentrate on anything for more than one and a half hours at a time. AR 291. The VE testified that this person would not be able to perform any of the Plaintiff's past relevant work or any other work in the regional or national economy. AR 291.

For the third hypothetical, the Plaintiff's legal counsel asked the VE to assume a person with a medium RFC who would need to take a 20-minute break every hour. AR 291. The VE testified that there would not be work that could be done in the national economy. AR 291.

Medical Evidence

On May 26, 2000, Plaintiff underwent x-rays of her lumbar spine and right hip. AR 206. The lumbar spine series revealed disc degeneration at L4-5 and L5-S1. AR 206. Her right hip x-ray revealed mild degenerative change. AR 206.

On June 10, 2000, Plaintiff underwent magnetic resonance imaging of her hips. AR 204. Radiologist Mario Deguchi, M.D., opined that Plaintiff had no MRI evidence for avascular

necrosis, but had early MRI manifestation of osteoarthritis of the hips, degenerative disc disease of the spine and mild levoconvex scoliosis of the lumbar spine.  AR 204.

On December 27, 2001, Plaintiff saw Nurse Practitioner M Gonzales for low abdomen pressure and lower back pain.  AR 161.  Plaintiff was diagnosed with a UTI, dizziness and GERD.  AR 161.

On February 13, 2002, Plaintiff saw Colleen M. Seargeant, FNP/PA-C.  AR 147.  Plaintiff complained of nausea and vertigo.  AR 147.  Nurse Practitioner Seargeant assessed Plaintiff with dermatomyositis-stable, depression, nausea and chronic vertigo.  AR 147.

In April 2002, Plaintiff saw Nurse Practitioner Gonzales for high blood pressure.  AR 161.  Plaintiff was assessed with hypertension and prescribed Atenolol.  AR 161.

On April 24, 2002, Plaintiff sought treatment from Charles H. Boniske, M.D.  AR 146.  Dr. Boniske diagnosed her with dermatomyositis, osteoporosis, hypertension, dependent edema and obesity.  AR 146.  She was being treated with methotrexate, prednisone, Aciphex, Premarin and Celebrex.  AR 146.  Plaintiff complained of nausea, abdominal pain, incontinence and intermittent sharp chest pain with radiation into her left arm.  AR 146.  On examination, Plaintiff did not have any major signs of active inflammation.  AR 146.  Dr. Boniske opined that Plaintiff's dermatomyositis was "quiescent."  AR 146.  She was to return in 2 ½ months.  AR 146.

On May 6, 2002, Plaintiff saw Dr. Adolph Nava, M.D., for a twisted toe and complaints of dizziness, motion sickness.  AR 159.  Plaintiff reported needing state disability because she lost her commercial driver's license.  AR 159.  She also indicated that her Atenolol made her sleepy.  AR 159.  Dr. Nava opined that Plaintiff had good control of her hypertension.  AR 159.  The plan was to wean her off Atenolol for hypertension and refer her to a neurologist.  AR 159.

On June 11, 2002, Plaintiff saw Dr. Nava.  AR 157.  Dr. Nava opined that Plaintiff's fatigue "significantly improved."  AR 157.  He diagnosed her with urinary incontinence.  AR 157.

On April 12, 2004, Plaintiff saw Mohammed Ali, M.D., at Visalia Health Center for complaints of weakness in the upper and lower extremities.  AR 189.  Dr. Ali assessed Plaintiff

with abdominal ascited, history of cervical cancer and hypertension. AR 189. Dr. Ali advised Plaintiff to take Atenolol, hydrochlorothiazide and potassium chloride. AR 189.

On May 26, 2004, Zaky Moussa, M.D., a Diplomate of the American Board of Internal Medicine, completed a comprehensive internal medicine consultative examination of Plaintiff. AR 165-167. Plaintiff complained of pain all over her body and a skin rash. AR 165. On physical examination, Plaintiff was alert, oriented and in no apparent distress. AR 166. She did not have a rash on her skin. AR 166. Her range of motion of her cervical spine, back, shoulders, elbows, wrists, hands, hips, knees and ankles were within normal limits. AR 166-167. She was able to toe, heel and tandem gait without any difficulty. AR 166. On neurological exam, she had good motor tone bilaterally and good active motion with muscle strength of 5/5 in all extremities. AR 167. Dr. Moussa opined that Plaintiff's dermatomyositis and hypertension were under adequate control. AR 167. He found no abnormality on the physical exam to correlate with the symptoms. AR 167. He based his opinion on the fact that muscle tone and motor functions were normal. AR 167. Dr. Moussa believed that with adequate pain control and compliance to medication, Plaintiff should be able to do full time jobs without limitations. AR 167. Dr. Moussa suggested a second opinion from a rheumatologist. AR 167.

On June 14, 2004, Plaintiff received follow-up treatment from Dr Ali at Visalia Health Center. AR 187. Dr. Ali assessed Plaintiff with dermatomyositis and Type II diabetes. AR 187. She was to continue previous medications. AR 187. Dr. Ali opined that Plaintiff's blood sugars were under control. AR 187. He further opined that if Plaintiff lost a lot of weight or had any other symptoms she would need "to be ruled out for any occult malignancy." AR 187.

On June 22, 2004, Plaintiff saw Dr. Boniske at the Hillman Health Center Rheumatology Clinic. AR 205. Dr. Boniske opined that Plaintiff had no evidence for dermatomyositis. AR 205. He also opined that her dermatomyositis was quiescent when he saw her two years before and it remained quiescent without medications. AR 205.

On July 8, 2004, state agency physicians Evangeline Murillo, M.D., and Brian Ginsburg, M.D., completed a psychiatric review technique form. AR 169-182. The physicians opined that Plaintiff had no medically determinable impairment. AR 169.

Plaintiff received treatment from Arthur Zeismer, M.D., on approximately nine occasions between July 26, 2004, and May 20, 2005. AR 185, 186, 207-210, 218, 219, 221. During that time, Dr. Zeismer diagnosed her with GERD, diabetes, forgetful dementia, Alzheimer's, right shoulder pain and arthritis. AR 207-210.

On October 4, 2004, Dr. Zeismer opined on a prescription pad note that Plaintiff was "completely disabled" for 12 or more months due to Alzheimer's, arthritis and diabetes. AR 211.

On December 16, 2004, Plaintiff sought treatment from Dr. Boniske at the Rheumatology Clinic. AR 212. Plaintiff complained of difficulty raising her right arm after lifting some heavy boxes. AR 212. On examination, Plaintiff had no localized weakness in any of her muscles, but had symptoms suggestive of a right rotator cuff tear. AR 212. Plaintiff was "not interested in further work up" for her shoulder. AR 212. Dr. Boniske diagnosed Plaintiff with a history of dermatomyositis that was clinically quiescent, diabetes and hypertension. AR 212.

On February 22, 2005, Plaintiff underwent x-rays of her right shoulder and humerus. AR 220. Plaintiff's right shoulder and visible right humerus were normal. AR 220.

On October 21, 2005, Dr. Zeismer completed a Residual Functional Capacity Questionnaire. AR 222-226. Dr. Zeismer diagnosed Plaintiff with high blood pressure, diabetes, shoulder pain, Alzheimer's and deafness. AR 222. He opined that Plaintiff's experience of pain, fatigue or other symptoms was severe enough to interfere constantly with attention and concentration needed to perform even simple work tasks. AR 223. She could maintain attention and concentration for 5 minutes at a time. AR 223. She was incapable of even "low stress" jobs due to Alzheimer's and deafness. AR 224. Dr. Zeismer further opined that Plaintiff could walk one city block without rest or severe pain, could sit for five minutes at one time before needing to get up, could stand for five minutes at one time before needing to sit down or walk around and could sit, stand or walk for less than 2 hours in an 8-hour working day with normal breaks. AR 224. During an eight-hour day, Plaintiff would need to walk every five minutes for five minutes each time. AR 224. She would not need a job that permitted shifting positions at will, but would need to take unscheduled breaks frequently. AR 225. Dr. Zeismer opined that Plaintiff "can't work." AR 225. Dr. Zeismer further opined that it was "very likely" Plaintiff must use a cane or

other assistive device while engaging in occasional standing/walking. AR 225. She could never lift and carry less than 10 pounds in a competitive work situation. AR 225. She could never look down, turn her head right or left, look up or hold her head in a static position. AR 225. She also never could twist, stoop (bend), crouch, climb ladders or climb stairs. AR 225. She had significant limitations in doing repetitive reaching, handling or fingering. AR 226. Dr. Zeismer also opined that Plaintiff's hearing was "very low" and she was "very forgetful." AR 226.

ALJ's Findings

The ALJ determined that Plaintiff met insured status requirements through December 31, 2008. AR 15. The ALJ also determined that Plaintiff had not engaged in substantial gainful activity at any time relevant to his decision. AR 15. The ALJ found that Plaintiff had the medically determinable impairments of dermatomyositis, type two diabetes mellitus, hypertension and high cholesterol, but she did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months. AR 15-16. Therefore, the ALJ concluded that Plaintiff did not have a severe impairment or combination of impairments and was not under a disability. AR 16-17.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means more than a mere scintilla, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks and citation omitted). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's

1  determination that the claimant is not disabled if the Commissioner applied the correct legal
2  standards, and if the Commissioner's findings are supported by substantial evidence. *See*
3  *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

4  **REVIEW**

5  In order to qualify for benefits, a claimant must establish that she is unable to engage in
6  substantial gainful activity due to a medically determinable physical or mental impairment which
7  has lasted or can be expected to last for a continuous period of not less than 12 months. 42
8  U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of
9  such severity that she is not only unable to do her previous work, but cannot, considering her age,
10 education, and work experience, engage in any other kind of substantial gainful work which
11 exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).
12 The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th
13 Cir. 1990).

14 In an effort to achieve uniformity of decisions, the Commissioner has promulgated
15 regulations which contain, inter alia, a five-step sequential disability evaluation process. 20
16 C.F.R. §§ 404.1520 (a)-(g), 416.920 (a)-(g) (2006). Applying the evaluation process in this case,
17 the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity for the relevant
18 time period; and (2) does not have an impairment or a combination of impairments that is
19 considered "severe" based on the requirements in the Regulations (20 C.F.R. §§ 404.1520,
20 416.920 (2006)). AR 15-17.

21 Plaintiff argues that the ALJ erred by (1) improperly assessing her back pain, shoulder
22 pain and diabetes as non-severe; (2) improperly assessing the opinion of her treating physician,
23 Dr. Zeismer; (3) improperly assessing her credibility; and (4) failing to adopt to the vocational
24 expert's testimony.
25 ///
26 ///
27 ///
28 ///

**DISCUSSION**

A. <u>Substantial Evidence</u>

    1. <u>Step Two-Severity of Impairments</u>

Plaintiff contends that her diabetes, back pain and shoulder pain have more than a minimal effect on her ability to do basic work activities and are severe impairments. As stated, Plaintiff bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). A person is disabled if her impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505(a), 416.905(a). A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at step two of the sequential evaluation if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). SSR 85-28. In determining whether an impairment or combination of impairments is "severe," an ALJ should carefully examine the medical findings that describe the impairments and make an "informed judgment" about the limitations and restrictions the impairment and related symptoms impose on the person's physical and mental ability to do basic work activities. SSR 96-3p.

Here, the ALJ determined that Plaintiff's diabetes did not significantly limit her ability to perform basic work activities and that the record lacked evidence of any complications from her condition. AR 16. The presence of diabetes does not necessarily equate to a finding that a claimant is disabled. *Wilson v. Chater*, 76 F.3d 238 (8th Cir. 1996). In fact, if proper controlling

methods such as diet, exercise and medications can control a person's hyperglycemia, the ALJ can properly determine that it is not disabling. Holguin v. Harris, 480 F.Supp. 1171 (N.D.Cal. 1979); Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993). Although Plaintiff argues that her diabetes has more than a minimal effect, Plaintiff cites no limitations or medical evidence of record supporting her position. Treatment records demonstrate that Plaintiff's blood sugars were "under control." AR 149, 152, 187, 210, 215, 218, 219, 221.

In connection with her back pain, Plaintiff argues that her x-ray and MRI reveal degenerative disc disease and osteoarthritis. In 2000, x-rays of Plaintiff's lumbar spine revealed disc degeneration at L4-5 and L5-S1 and x-rays of her right hip revealed mild degenerative change. AR 206. A subsequent MRI showed early manifestation of osteoarthritis of the hips, degenerative disc disease of the spine and mild levoconvex scoliosis of the lumbar spine. AR 204. The ALJ noted that Plaintiff's x-ray and MRI examination from 2000 indicated "mild degenerative changes in the lumbar spine and hips," but the ALJ found no other documented signs of back or hip abnormality and insufficient evidence to establish any severe medically determinable back impairment. AR 15-16. The record reveals no evidence of limitations due to Plaintiff's back pain and Plaintiff herself does not cite to any. While Plaintiff contends that her treating physician, Dr. Zeismer, limited her to less than sedentary work, the record reveals that Dr. Zeismer's opinion was not based on back pain. AR 206, 222. Further, clinical findings from examining physician Zaky Moussa, M.D., support the ALJ's determination that Plaintiff did not have a severe back impairment. During examination by Dr. Moussa, Plaintiff's range of motion of her cervical spine, back and hips were within normal limits and she had good motor tone and good active motion. AR 166-167. See, e.g., Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (examining physician opinion based on independent clinical findings equals substantial evidence).

With regard to Plaintiff's shoulder pain, Plaintiff cites to the caution issued by Dr. Boniske regarding lifting. Plaintiff is correct to note that Dr. Boniske explained to Plaintiff in December 2004 that she needed "to be very careful when lifting things." AR 212. However, Dr. Boniske's caution resulted from complaints by Plaintiff that she had more difficulty raising her

1  right arm after lifting "some heavy boxes." AR 212. Further, on physical examination by Dr.
2  Boniske, Plaintiff had no localized weakness in any of her muscles and her shoulder range of
3  motion was "really very good." AR 212. Dr. Boniske indicated that Plaintiff's symptoms were
4  "suggestive" of a right rotator cuff tear, but Plaintiff was "not interested in further work up" for
5  her shoulder. AR 212. Although Dr. Zeismer opined in October 2005 that Plaintiff's shoulder
6  pain limited her residual functional capacity, x-rays of Plaintiff's right shoulder and humerus,
7  which were initiated by Dr. Zeismer and completed in February 2005, were normal. AR 220.
8  Accordingly, the ALJ's conclusion that there was insufficient evidence to establish a medically
9  determinable shoulder impairment is supported by the record.

   2.   Treating Physician Opinion

11  Plaintiff argues that the ALJ improperly rejected the opinion of her treating physician, Dr.
12  Arthur Zeismer, and that more weight should be given to the opinion of a treating source. It is
13  true that the medical opinion of a claimant's treating physician is entitled to "special weight."
14  *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). Reliance on the opinion of the treating
15  physician is based not only on the fact that he is employed to cure but also on his greater
16  opportunity to observe and know the patient as an individual. However, a treating physician's
17  opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Matney v.
18  Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.
19  1989). An ALJ may reject a contradicted treating physician's opinion on the basis of clear
20  findings that set out specific, legitimate reasons for the rejection. *Lester v. Chater*, 81 F.3d 821,
21  830 (9th Cir. 1995).
22  Here, the ALJ assigned little weight to Dr. Zeismer's opinion that Plaintiff was
23  completely disabled. AR 17. In October 2004, Dr. Zeismer opined in a prescription pad note
24  that Plaintiff was completely disabled for 12 months due to Alzheimer's, arthritis and diabetes.
25  AR 211. As pointed out by the Commissioner, the opinion that Plaintiff was "completely
26  disabled" is not a medical opinion, but is an opinion about an issue reserved to the
27  Commissioner. It is therefore not accorded the weight of a medical opinion. *See* 20 C.F.R. §§

404.1527(e)(1), 416.927(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

The ALJ also assigned little weight to Dr. Zeismer's opinion that Plaintiff was limited to significantly less than the full range of sedentary work. AR 17. In October 2005, Dr. Zeismer issued a restrictive functional capacity assessment of Plaintiff based on her high blood pressure, diabetes, shoulder pain, Alzheimer's and deafness. AR 222-226. The ALJ rejected this opinion because Dr. Zeismer's treatment records did not contain any objective signs or findings to support the opinion and Dr. Zeismer's opinion was contrary to all the medical evidence of record. AR 17. An ALJ need not accept an opinion of a treating physician if it is unsupported by clinical findings. *Magallanes,* 881 F.2d at 751.

In connection with Dr. Zeismer's opinion that Plaintiff was disabled by Alzheimer's disease, Dr. Zeismer's diagnosis appears to be based only on Plaintiff's allegations of forgetfulness. AR 185, 207, 209, 210, 218, 221. There is no record of any tests or other findings to support Dr. Zeismer's determination of Alzheimer's or his functional limitations related to the disease.

With regard to Dr. Zeismer's limitations associated with arthritis, there are no clinical findings or laboratory tests to support the diagnosis in his treatment records. As noted by the Commissioner, Dr. Zeismer diagnosed Plaintiff with arthritis on October 4, 2004, which was the same day he opined that Plaintiff was disabled by arthritis. AR 210-211. However, the remainder of Dr. Zeismer's treatment notes contain no reference to arthritis or to any functional limitations associated with the diagnosis. AR 185, 186, 207, 208, 209, 218, 219, 221. The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With regard to Dr. Zeismer's opinion regarding Plaintiff's functional limitations due to deafness, relevant treatment records contain no test results or documented findings regarding Plaintiff's hearing to support the diagnosis and the associated functional limitations.

In connection with Dr. Zeismer's limitations based on Plaintiff's diabetes and high blood pressure, treatment records reveal that these conditions were adequately controlled with

medications. AR 152, 157, 159, 185, 187, 208, 210, 215, 218, 219, 221. Further, Plaintiff herself testified that medication lowered her blood pressure. AR 261.

Insofar as Dr. Zeismer based his limitations on Plaintiff's shoulder pain, the ALJ correctly determined that this was a transient complaint following the lifting of some heavy boxes as subsequent x-rays of her shoulder were normal. AR 212, 220.

The Court is mindful of the recent decision in *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), where the Ninth Circuit reiterated and expounded upon its position regarding the weight afforded to the opinion of a treating physician. However, where the treating physician's opinion is not supported in the first instance, as here, *Orn v. Astrue* is not instructive.

### 3. Credibility

Plaintiff contends that the ALJ did not properly evaluate her credibility pursuant to Social Security Ruling ("SSR") 96-7p. The ALJ is required to make specific findings assessing the credibility of Plaintiff's subjective complaints. *Ceguerra v. Sec'y of Health & Human Serv.*, 933 F.2d 735, 738 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn*, 495 F.3d at 635 (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester,* 81 F.3d at 834. Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.* at 959.

In evaluating the credibility of Plaintiff's symptom testimony, it appears that the ALJ did consider factors set out in SSR 96-7p. Such factors include the "individual's daily activities," the "location, duration, frequency, and intensity of the individual's pain or other symptoms," factors "that precipitate and aggravate the symptoms," the "type, dosage, effectiveness, and side effects of any medication," treatment, other than medication," any "measures other than treatment the

individual uses or has used to relieve pain or other symptoms," and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p.

First, the ALJ discounted Plaintiff's contentions based on her daily activities. AR 17. In so doing, the ALJ referenced Plaintiff's testimony that she lives alone and is able to take care of her personal and household needs. AR 17. Plaintiff testified that she performs household chores such as vacuuming, dusting and sweeping. AR 268-269. She uses a cart to walk about six blocks to the grocery store and then returns six blocks home. AR 278. On good days, she can walk 24 blocks. AR 278. She prepares her own meals, reads, plays games on the computer and socializes with her family. AR 270-271, 276, 278. Plaintiff's daughter also confirmed that Plaintiff was independent in her daily living, including taking care of her personal needs, cooking her own meals, going out alone daily or every other day and performing light cleaning. AR 104-106. If a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations. *Morgan v. Commissioner of Social Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ next rejected Plaintiff's credibility based on inconsistencies with the third-party statement of Plaintiff's daughter. AR 17. The ALJ may use "ordinary techniques" in addressing credibility, such as testimony that appears less than candid. *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). Plaintiff testified that she cannot drive due to her medications and her vision. AR 261, 281. However, Plaintiff's daughter stated that Plaintiff does not drive because she could not afford the upkeep on her vehicle. AR 107.

Finally, the ALJ also cited the conservative nature of Plaintiff's treatment when assessing her credibility. Evidence of "conservative treatment," such as a claimant's use of only over-the-counter pain medication, is sufficient to discount a claimant's testimony regarding severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). Plaintiff testified that she sees her physician only once every two or three months so he can see how she is doing, she treats with medication only and she has not pursued any treatment for Alzheimer's disease. AR 264, 282-

286.  She also reported using only over-the-counter medication for pain, including ibuprofen and "Absorbine Jr." AR 286.

Based on the above, the Court finds the ALJ's credibility determination is supported by substantial evidence and free of legal error.

4.     Hypothetical Question

Plaintiff argues that the ALJ erred by failing to adopt the vocational expert's testimony. In this case, however, the ALJ found that Plaintiff was not disabled at step two of the sequential evaluation process.  If a claimant is determined not disabled at a step in the sequential evaluation, then the evaluation will not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2006).  As the ALJ's decision at step two is supported by substantial evidence, the ALJ was not required to further evaluate Plaintiff at the next steps of the sequential evaluation process, including consideration of the testimony of the vocational expert at steps four and/or five.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Barbara Brashier.

IT IS SO ORDERED.

Dated:   **July 15, 2008**                         /s/ **Gary S. Austin**
                                                     UNITED STATES MAGISTRATE JUDGE